**O**

# United States District Court
# Central District of California

| | |
|---|---|
| ARMIDA RIVERA, | Case № 5:20-cv-01719-ODW (SPx) |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT VISHAY SPRAGUE, INC.'S MOTION FOR SUMMARY JUDGMENT [27]** |
| VISHAY AMERICAS, INC., et al., | |
| Defendants. | |

## I.  INTRODUCTION

Plaintiff Armida Rivera brings this action pursuant to the California Fair Employment and Housing Act ("FEHA") against her former employer, Defendant Vishay Sprague, Inc. for discrimination, retaliation, and related FEHA claims.  (First Am. Compl. ("FAC"), ECF No. 13.)

Before the Court is Defendant's Motion for Summary Judgment or Adjudication.  (Mot. Summ. J. ("Mot."), ECF No. 27.)  For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion.[1]

---

[1] After considering the papers filed in connection with this Motion, the Court deemed this matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

The following allegations and facts are uncontested.  Rivera began working for Vishay Sprague, Inc. ("Vishay") on May 23, 1993, at its Ontario, California facility. (FAC ¶ 16; Combined Statement Uncontroverted Facts & Conclusions of Law ("CSF") 1, ECF No. 29-1.)  Rivera became a laser operator in 2003, and she held that position until the events giving rise to this suit.  (CSF 2.)  The job of a laser operator is such that Rivera needed to be physically present at the Ontario facility to perform her job.  (CSF 4.)

Rivera's mother has Alzheimer's disease, and for many years Rivera had been her mother's caretaker.   (CSF 6–7.)  This responsibility caused Rivera stress and anxiety, and she frequently took intermittent leaves from her job at Vishay to care for her mother.  (CSF 8–9.)  Rivera's supervisors were aware of this leave and the reasons for taking it, and Vishay readily granted the intermittent leave Plaintiff requested. (CSF 10.)

On May 25, 2018, Rivera obtained a doctor's note indicating that, "[d]ue to a medical condition,"[2] she was "under treatment" and unable to work beginning that day and lasting until July 30, 2018.   (Decl. of Irene Scholl-Tatevosyan ("Scholl-Tatevosyan Decl.") Ex. 5, ECF No. 27-10; CSF 27.)  Vishay granted Rivera this leave and did so "solely as an accommodation of her disability/medical condition." (CSF 28, 36.)

Later, Rivera provided Vishay with a second doctors' note which similarly indicated she would be on medical leave until "at least" October 29, 2018.  (CSF 29–30.   Vishay accordingly extended Rivera's leave to October 29, 2018.   (CSF 31.) Then, in October 2018, Rivera sent Vishay a third doctors' note extending her leave through January 28, 2019.  (CSF 42.)

---

[2] The parties agree that stress and anxiety precipitated Rivera's leave.  Although identified both as caretaking responsibilities and job responsibilities, the source of the stress and anxiety is immaterial for the purpose of this Motion.

Vishay's leave of absence policy provides that "[i]f an employee remains on disability leave for a full 26 weeks and is unable to return to work, the employee will be terminated from active employment."  (CSF 37.)  Consistent with this policy, Vishay, through its Human Resources Manager Shannon Nabeta, began having conversations with Rivera about a month before this 26-week period was set to expire, to determine whether she would be able to return to work.  (CSF 38–39.)  These efforts failed to yield results.  Rivera was still on medical leave as of November 25, 2018, the date that Vishay terminated her employment consistent with its policy. (CSF 45.)

Rivera continued to see her doctor following termination.  Eventually, her doctor gave her a note providing that she would be able to return to work on May 28, 2019, without restrictions.  (CSF 46–47.)

On June 2, 2020, Rivera brought suit in the San Bernardino Superior Court. (Notice of Removal ¶ 1, ECF No. 1.) Rivera asserts claims for (1) discrimination, Cal. Gov't Code § 12940(a); (2) retaliation, Cal. Gov't Code § 12940(h); (3) failure to prevent discrimination and retaliation, Cal. Gov't Code § 12940(k); (4) retaliation, Cal. Gov't Code § 12945.2; (5) failure to provide reasonable accommodations, Cal. Gov't Code § 12940(m); (6) failure to engage in a good faith interactive process, Cal. Gov't Code § 12940(n); (7) wrongful termination in violation of public policy; and (8) declaratory judgment.

On August 25, 2020, Vishay removed the case to federal court.[3]  On April 30, 2021, Vishay filed this Motion seeking summary judgment as to each of Rivera's eight claims.  Vishay also moved for summary adjudication, a California state court procedural device, which the Court takes as a motion for partial summary judgment on one or more of Rivera's claims.  *Compare* Fed. R. Civ. P. 56(a) *with* Cal. Civ. Proc. Code § 437c(f).

---

[3] Rivera replaced the erroneously-sued Vishay Americas, Inc. with the current Defendant, Vishay, in the FAC.

### III.   LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden of establishing the absence of a genuine issue of material fact lies with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *See id.*; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). The non-moving party must show that there are "genuine factual issues that . . . may reasonably be resolved in favor of either party." *Franciscan Ceramics*, 818 F.2d at 1468 (quoting *Anderson*, 477 U.S. at 250) (emphasis omitted). The court should grant summary judgment against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322.

In ruling on summary judgment motions, courts view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "uncorroborated and self-serving" testimony will not create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). "Conclusory" or "speculative" testimony is likewise "insufficient to raise genuine issues of fact and defeat summary judgment. *See Hous. Rights Ctr. v. Sterling*, 404 F. Supp. 2d 1179, 1183 (C.D. Cal.

2004).  Though the Court may not weigh conflicting evidence or make credibility determinations, a plaintiff must ultimately provide more than a "scintilla" of contradictory evidence to avoid summary judgment.  *Anderson*, 477 U.S. at 251–52; *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

Pursuant to the Local Rules, parties moving for summary judgment must file a proposed "Statement of Uncontroverted Facts and Conclusions of Law" that should set out "the material facts as to which the moving party contends there is no genuine dispute."  C.D. Cal. L.R. 56-1.  A party opposing the motion must file a "Statement of Genuine Disputes" setting forth all material facts as to which it contends there exists a genuine dispute.  C.D. Cal. L.R. 56-2.  "[T]he Court may assume that material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion."  C.D. Cal. L.R. 56-3.

## IV.     DISCUSSION

The Court considers each of Rivera's eight claims in turn.  In this case, the reasonableness of the length of leave Vishay granted Rivera is a central issue that arises in several of Rivera's causes of action.  Accordingly, the Court begins with analysis of Rivera's reasonable accommodation claim.

### A.     Fifth Claim: Failure to Provide Reasonable Accommodation (Cal. Gov't Code § 12940(m))

Rivera's fifth claim is for Vishay's failure to provide reasonable accommodation.  (FAC ¶ 73–80.)  California Government Code section 12940(m) makes it unlawful for "an employer . . . to fail to make reasonable accommodation for the known . . . disability of an . . . employee."  The essential elements of a failure to accommodate claim are: (1) the plaintiff has a disability covered by the FEHA; (2) the plaintiff is a qualified individual (i.e., he or she can perform the essential functions of the position with or without reasonable accommodation); and (3) the employer failed

1    to reasonably accommodate the plaintiff's disability.  *Jensen v. Wells Fargo Bank*,

2    85 Cal. App. 4th 245, 256 (2000).   "[I]n appropriate circumstances, reasonable

3    accommodation can include providing the employee accrued paid leave or additional

4    unpaid leave."  *Hanson v. Lucky Stores, Inc.*, 74 Cal. App. 4th 215, 226 (1999).   In

5    such cases, an employee who is on a reasonable, non-indefinite leave of absence is

6    considered a qualified individual because the employee will be able to return to work

7    (i.e., to the essential functions of the position) after a reasonable amount of leave has

8    been granted as an accommodation.  *See, e.g., id.*

9    This   Motion   places   the   first   two   elements   of   Rivera's   reasonable

10   accommodation claim at issue.  The Court examines each element in turn.

11       *1.    Disability*

12       Vishay does not dispute that Rivera took medical leave due to stress and

13   anxiety.  (CSF 36.)  Vishay does briefly dispute, however, whether stress and anxiety

14   qualify as a disability under FEHA.  (Mot. 8.)

15       FEHA expressly defines mental disability and includes it within FEHA's ambit.

16   "'Mental disability' includes . . . [h]aving any mental or psychological disorder or

17   condition, such as intellectual disability, organic brain syndrome, emotional or mental

18   illness, or specific learning disabilities, that limits a major life activity," as well as

19   "[b]eing regarded or treated by the employer or other entity covered by this part as

20   having, or having had, any mental condition" that makes or could make achievement

21   of a major life activity difficult.  Cal. Gov't Code § 12926(j)(1), (4), (5).  Case law

22   generally recognizes anxiety disorders as disabilities, with particular exceptions not

23   applicable here.  *Alejandro v. ST Micro Elecs., Inc.*, 129 F. Supp. 3d 898, 908 (N.D.

24   Cal. 2015) (recognizing allegations of bipolar and generalized anxiety disorder as

25   sufficient allegation of disability); *cf.* Cal. Gov't Code § 12926.1(c) ("[M]ental

26   disabilities include, but are not limited to, chronic or episodic conditions such as . . .

27   clinical depression . . . ."); *but see Higgins-Williams v. Sutter Med. Found.*, 237 Cal.

28   App. 4th 78, 84 (2015) ("An employee's inability to work under a particular

supervisor because of anxiety and stress *related to the supervisor's standard oversight of the employee's job performance* does not constitute a disability under FEHA." (emphasis added)).  Working is considered a major life activity, Cal. Gov't Code § 12926(j)(1)(C), and "repeated or extended absences from work may constitute a limitation on the major life activity of working," *Soria v. Univision Radio L.A., Inc.*, 5 Cal. App. 5th 570, 588 (2016).

Here, the parties do not dispute that Rivera took leave due to anxiety, and that Vishay at first granted her leave based on a doctor's note indicating a "medical condition."  Thus, the parties do not dispute that Rivera's anxiety, which is a mental condition, prevented her from working.  (*See also* CSF 19 ("Rivera's depression and anxiety is the disability and/or medical condition at issue in this action.").)  Whether a condition constitutes a disability is either a question of fact for the jury or a question of law for the Court, depending on whether the underlying facts are disputed.  *Compare Atkins v. City of Los Angeles*, 8 Cal. App. 5th 696, 715 (2017) ("Questions of statutory interpretation, and the applicability of a statutory standard to undisputed facts, present questions of law . . . ."), *with Diaz v. Fed. Express Corp.*, 373 F. Supp. 2d 1034, 1053 (C.D. Cal. 2005) (finding questions of fact precluded summary judgment on issue of disability, where record showed employee suffered from temporary anxiety and depression).  Here, it is sufficient to note that (1) the undisputed facts do not compel the conclusion that, as a matter of law, Rivera was *not* disabled, and (2) to the extent the facts are disputed, a reasonable jury could find Rivera's anxiety qualifies as a disability.  Accordingly, summary judgment will not be granted on this ground.

### 2.    *Qualified individual; reasonableness of accommodation*

To recover for a failure to provide reasonable accommodation, the plaintiff must also show that, at the time of the failure, she was able to perform the functions of her job with or without reasonable accommodation.  *Jensen*, 85 Cal. App. 4th at 255.  In *Sanchez v. Swissport, Inc.*, 213 Cal. App. 4th 1331, 1341 (2013), the California

Court of Appeal took up the case of a pregnant employee who had been out on leave due to a high-risk pregnancy for almost five months. *Id.* at 1335. Rather than wait for the employee to carry her baby to term, the employer terminated her employment. *Id*. The California Supreme Court found—despite a provision in a related California law, the Pregnancy Disability Leave Law ("PDLL"), capping PDLL pregnancy leave at four months—that a further leave of absence might reasonably have constituted a reasonable accommodation of the employee's pregnancy. *Id.* at 1341 (collecting cases and noting that "[a] finite leave of greater than four months may be a reasonable accommodation for a known disability under the FEHA").

This case parallels *Sanchez*. Vishay argues that, by the time it terminated Rivera's employment, it had already provided all possible reasonable accommodation, and that any request for additional leave would have been unreasonable. (Mot. 13.) Vishay's argument is based solely on the fact of Rivera's six-month leave; Vishay presents no evidence that providing additional leave would have burdened it. If anything, the sole assertion Vishay makes on this point—that, from June to November 2018, Vishay retained a temporary employee to cover Rivera's work in her absence—suggests that granting additional leave would not have been a burden. (CSF 44.) Upon this factual presentation, reasonable minds might differ as to whether Rivera's request for an additional three months of leave after six continuous months of leave was reasonable. *Anderson*, 477 U.S. at 248 (precluding summary judgment when a reasonable jury could return a verdict for the nonmoving party).

Some of the cases frame the employer's right to lawfully terminate a disabled employee's employment in terms of whether the employee's leave is "finite," as it was in *Sanchez*, or "indefinite," as it was in *Hanson*, where the evidence showed that a meat cutter was permanently disabled and would likely never be able to return his old job and that there was no other available position with modified duties. 74 Cal. App. 4th at 227. On one hand, "[r]easonable accommodation does not require the employer to wait indefinitely for an employee's medical condition to be corrected." *Id.* at 226–

27.   On the other hand, "[a] finite leave can be a reasonable accommodation under FEHA, provided it is likely that at the end of the leave, the employee would be able to perform his or her duties."   *Id.* at 226.   In the cases that employ this framework, however, the employee's condition was known to the employer and was such that the employer was on clear notice whether the condition itself (as opposed to merely the leave) was finite or indefinite.   In *Sanchez*, the employee was pregnant; the obvious implication was that the pregnancy-related disability would conclude after nine months and the employee would be able to return to work shortly thereafter.   By contrast, in *Myers v. Hose*, 50 F.3d 278 (4th Cir. 1995)[4], a bus driver's chronic, recurrent, and sudden-onset health conditions clearly precluded him from safely operating a bus at any time in the future, and the Fourth Circuit held that nothing in the ADA's "reasonable accommodation provision requires an employer to wait an indefinite period for an accommodation to achieve its intended effect."   *Id.* at 283; *see also Tipton v. Airport Terminal Servs.*, No. CV 18-09503-AB (JEMx), 2020 WL 3980127 (C.D. Cal. Mar. 31, 2020) (utilizing finite/indefinite framework where employee had a serious shoulder injury and was admittedly unable to state when she would be able to return to work).

The present case is different in one key respect: nothing in the record indicates that Vishay was aware of the specific nature of Rivera's medical condition beyond the bare fact that it was a medical "condition," "conditions," or "complication." (Scholl-Tatevosyan Decl. Exs. 5, 6, 8.)   And the evidence submitted regarding Rivera's conversations with Shannon Nabeta, Vishay's Human Resources Manager, indicates only that the two discussed whether Rivera could return to work.   (Scholl-Tatevosyan Decl. Ex. 1 ("Rivera Dep.") 54:18–56:23, ECF No. 27-6 (Rivera testifies to no discussion of specifics of medical condition); Ex. 2 ("Nabeta Dep.") 57:1–21, ECF

---

[4] It appears that *Myers* was one of the first circuit-level cases to tie the concept of indefiniteness of leave to reasonableness of accommodation. *Myers* was cited by the Sixth Circuit in *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (1998), and in turn by the California Court of Appeal in *Hanson*, a foundational state-court opinion on this issue.

No. 27-7 (Nabeta testifies to no recollection of discussion of specifics of medical condition).

This distinction renders the present case distinguishable from *Sanchez*, *Myers*, and other cases utilizing the finite/indefinite framework.  However, the reasoning in these cases is not altogether irrelevant, because ultimately, an employer is entitled to terminate an employee based on its reasonable assessment that the employee's leave is indefinite, and the employer's knowledge of the specific details of the employee's medical condition is relevant to whether the employer's assessment is reasonable.  However, at the summary judgment stage, that Vishay was not aware of the specific details of Rivera's condition cuts both ways.  One reasonable person might take this fact into account and determine that, in light of Rivera's twenty-five year history with this relatively large employer, (Decl. of Samvel Setyan Ex. B ("Plf.'s Nabeta Dep.") 10:14–19,  12:23–14:7,  18:21–19:7,  ECF  No. 28-4),  along  with  the  fact  that  a temporary  worker  appeared  to  be  covering  Rivera's  job  responsibilities  without incident, (CSF 44), Vishay was not reasonable in terminating her employment after only six months without giving her more time to address her condition and recover from it.  Another reasonable person might view these same circumstances and find that requiring Vishay to wait longer than six months without any indication of the nature, severity, or longevity of Rivera's disability would be unreasonable.  Summary judgment is not appropriate here because reasonable minds may differ on this conclusion.

The cases under FEHA or the ADA[5] in which a six-month disability leave was found to be the upper bound of reasonable as a matter of law are distinguishable.  The Ninth Circuit in *Lawler v. Montblanc North Am., LLC*, 704 F.3d 1235 (9th Cir. 2013), found a five-month leave to be the upper limit of reasonable, but the distinguishing facts were (1) the job was an active retail position; (2) the employee had a serious

---

[5] Where the ADA and FEHA align, courts applying California law may look to cases analyzing the ADA as instructive.  *Hanson*, 74 Cal. App. 4th at 224 n.7.

physical condition that materially hindered her ability to perform her job and appeared to be getting worse; and (3) the employee had been at the company for eight years. *Id.* at 1238–39.   The *Lawler* court did not examine whether extending the employee's leave would have been a reasonable accommodation because the employee "admitted that her disability ma[de] it impossible for her to fulfill the duties of her position" and did not argue that this would change in the future. *Id.* at 1243; *see also Tipton*, 2020 WL 3980127 at *8 (same).

Finally, the existence of an employer policy regarding disability leave makes little to no difference in this reasonableness analysis because the reasonableness of a disability leave is to be determined on a case-by-case basis, accounting for all the facts and circumstances.

The Court cannot conclude as a matter of law that Vishay had fulfilled its duty to reasonably accommodate when it terminated Rivera's employment after six months of medical leave.   There remains a genuine dispute as to whether Rivera would have been able to perform her job responsibilities after full reasonable accommodation had been granted—i.e., whether she was a qualified individual.   Accordingly, summary judgment cannot be granted on this ground.

In summary, Vishay has not met its burden as to Rivera's claim for failure to reasonably accommodate.   In the alternative, Rivera has demonstrated genuinely disputed issues of material fact.   The Court **DENIES** Vishay's Motion as to Claim Five.

**B.    Claim One: Discrimination (Cal. Gov't Code § 12940)**

Rivera's first claim is for discrimination.   (FAC ¶¶ 32–43.)   FEHA makes it unlawful for an employer to take an adverse employment action against an employee because of that person's disability.   Cal. Gov't Code § 12940(a).   To establish a prima facie case of FEHA disability discrimination, the employee-plaintiff must prove: (1) she suffered from a disability; (2) with or without reasonable accommodation, she could perform the essential functions of the employment position she held or desired;

and (3) she was subjected to an adverse employment action because of her disability. *Jensen*, 85 Cal. App. 4th at 254.  Termination is a widely recognized example of an adverse employment action.  *See, e.g.*, *Villiarimo*, 218 F.3d at 1064.

In rendering summary judgment on a discrimination claim, courts typically follow the burden shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to determine whether triable issues of fact exist for a jury to resolve.  However, there is a subset of disability discrimination claims for which the *McDonnell Douglas* framework is not appropriate, namely, cases in which the plaintiff's disability or perceived disability is the employer's stated reason for terminating the employee.  In such cases, there is no need to make any further inquiry into the employer's motive—i.e., into whether the "because of" requirement is met, *Jensen*, 85 Cal. App. 4th at 254—because the employer has already made clear that the reason employment was terminated was "because of" the employee's disability. *See Wallace v. County of Stanislaus*, 245 Cal. App. 4th 109, 115 (2016) ("California law does not require an employee with an actual or perceived disability to prove that the employer's adverse employment action was motivated by animosity or ill will against the employee.  Instead, California's statutory scheme protects employees from an employer's erroneous or mistaken beliefs about the employee's physical condition.")

This is one such case.  Rivera is not alleging that she was fired because of a discriminatory animus toward people with anxiety; instead, Rivera is alleging that her employer concluded (perhaps with no animus at all) that she had a disability that made her unable to do her job and fired her on that basis.  With these clarifications in mind, the Court examines each element of Rivera's discrimination claim to determine if it raises triable issues.  The first element—a disability—is identical to the first element of the reasonable accommodation claim and was addressed above.

1         *1.   Ability  to  perform  job  functions  with  or  without  reasonable*

2         *accommodation*

3         The parties do not dispute that Rivera's termination qualifies as an adverse

4 employment action. The key issue presented by the second element of Rivera's

5 discrimination claim is whether, at the time of Rivera's termination, she was able to

6 perform her job functions "with or without reasonable accommodation." *Jensen*,

7 85 Cal. App. 4th at 263.

8         As the foregoing analysis of the reasonable accommodation claim makes clear,

9 Vishay has failed in its burden of showing that it exhausted all reasonable

10 accommodation before terminating Rivera's employment. Certainly, at the time

11 Vishay terminated Rivera's employment, Rivera was not working or coming to the

12 jobsite. Because her job required her to be on site to operate the laser, she was, at that

13 time, unable to perform her job functions. But that is not the end of the inquiry.

14 Rivera was a qualified individual if she could have done her job with reasonable

15 accommodation. *Id.* at 254, n.3. Qualified individuals include those who can perform

16 their job after a leave of reasonable length. *See Sanchez*, 213 Cal. App. 4th at 1341

17 (finding that, had the pregnant plaintiff "been granted additional leave until childbirth,

18 she would have been able to perform the essential functions of her job with little or no

19 further accommodations").

20         As discussed above, it is an open, triable question whether it was reasonable of

21 Vishay to terminate Rivera's employment after six months of leave, or whether

22 Vishay's duty to accommodate might have required it to grant additional leave. Thus,

23 summary judgment will not be granted on this basis.

24         *2.   Adverse employment action and causal nexus*

25         The third element of a FEHA discrimination claim is an adverse employment

26 action that is causally connected to the plaintiff's disability. *Jensen*, 85 Cal. App. 4th

27 at 254. "[A]n employer has treated an employee differently 'because of' a disability

28 when the disability is a substantial motivating reason for the employer's decision to

subject the employee to an adverse employment action." *Wallace*, 245 Cal. App. 4th at 128. Here, Rivera's termination was the adverse employment action. *Villiarimo*, 218 F.3d at 1064. In turn, by indicating that it took this adverse employment action because Rivera did not return from disability leave after six months, Vishay effectively concedes that there is a causal connection between Rivera's disability and her termination. *Wallace*, 245 Cal. App. 4th at 128. Accordingly, summary judgment will not be granted for lack of adverse employment action or for lack of a causal nexus to a disability.

Whether Vishay discriminated when it terminated Rivera's employment remains a genuinely disputed issue, and Vishay has not otherwise shown entitlement to judgment as a matter of law. Accordingly, the Court **DENIES** summary judgment as to Claim One.

**C. Claim Two: Retaliation (Cal. Gov't Code § 12940(h))**

Rivera's second claim is for retaliation. FEHA provides that no employer may "discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under [FEHA] or because the person has filed a complaint, testified, or assisted in any proceeding under this part." Cal. Gov't Code § 12940(h). "Employees may establish a prima facie case of unlawful retaliation by showing that (1) they engaged in activities protected by the FEHA, (2) their employers subsequently took adverse employment action against them, and (3) there was a causal connection between the protected activity and the adverse employment action." *Miller v. Dep't of Corr.*, 36 Cal. 4th 446, 472 (2005). Seeking an accommodation of a disability qualifies as a protected activity. *Scott v. Mabus*, 618 F. App'x 897, 902 (9th Cir. 2015); Cal. Gov't Code § 12940(m)(2). Here, Rivera's requests for disability leave are the sole protected activity the parties place at issue. (Mot. 16; Opp'n 13.)

The *McDonnell Douglas* burden-shifting framework applies to retaliation claims. *Flait v. N. Am. Watch Corp.* 3 Cal. App. 4th 467, 476 (1992). Unlike with discrimination, there is no special exception for disability-based retaliation claims; all

retaliation claims require that a plaintiff show a causal nexus between the protected activity (here, Rivera's requesting additional leave) and the retaliatory act (here, the termination).   Under *McDonnell Douglas*, the plaintiff has the initial burden to establish a prima facie case.  *McDonnell Douglas*, 411 U.S. at 802.  If the prima facie case is shown, a presumption of discrimination arises, and the burden shifts to the defendant to show that the adverse employment action was taken for a legitimate, nondiscriminatory reason.  *Id.*  If the defendant states a legitimate, nondiscriminatory reason, the presumption is negated, and the burden shifts back to the plaintiff to demonstrate that the proffered reason is mere pretext for discrimination.  *Id.* at 804.

However, when an employer moves for summary judgment, "the burden is reversed . . . because the defendant who seeks summary judgment bears the initial burden."  *Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 745 (9th Cir. 2011) (internal quotation marks omitted).   Thus, to prevail on summary judgment, the employer is required to "show either that (1) plaintiff could not establish one of the elements of [the] FEHA claim or (2) there was a legitimate, [nonretaliatory] reason for its decision to terminate plaintiff's employment." *Lawler*, 704 F.3d at 1242 (first alteration in original).  If the employer meets its burden, then the "employee must demonstrate either that the defendant's showing was in fact insufficient or . . . that there was a triable issue of fact material to the defendant's showing." *Id.* (internal quotation marks omitted).

Here, Vishay argues that it had a nonretaliatory reason for terminating Rivera's employment: she had been out on disability leave for six continuous months and company policy limited disability leave to twenty-six continuous weeks.   Thus, Vishay has met its burden on summary judgment to show a legitimate nonretaliatory reason for termination, and the burden shifts to Rivera to show that Vishay's reason was pretextual.

Rivera has not met this burden.  Rivera argues that the temporal proximity between her third doctor's note and her termination provides sufficient evidence of

pretext for summary judgment. (Mot. 13–14.) "[T]o support an inference of retaliatory motive based on timing alone, the adverse action must have occurred 'fairly soon after the employee's protected expression.' Causation will only be inferred from timing alone if the proximity is 'very close.'" *Anderson v. City & County of San Francisco*, 169 F. Supp. 3d 995, 1028 (N.D. Cal. 2016) (citation omitted). Here, the record is not clear on exactly when Rivera submitted her doctor's note, indicating only that it was sometime in October 2018. Vishay terminated her employment on November 26, 2018, meaning the gap between the protected activity and the adverse employment action was about one to two months. However, November 26, 2018, was the six-month anniversary of Rivera's leave, which reinforces Vishay's claim that it terminated her employment pursuant to policy, rather than in retaliation for having submitted a doctor's note one or two months before. That Vishay had, in the past, readily granted Rivera kin care leave further militates against any inference of pretext.

Given the overwhelming evidence of the essentially undisputed reason Vishay terminated Rivera's employment, a request for accommodation in the form of a doctors' note submitted one or two months prior is, in this case, only a "scintilla" of evidence of pretext, which is insufficient to withstand summary judgment. *Addisu*, 198 F.3d at 1134. Accordingly, the Court **GRANTS** summary judgment as to Claim Two.

**D.     Claim Three: Failure to Prevent Discrimination and Retaliation (Cal. Gov't Code § 12940(k))**

Rivera's third claim is for failure to prevent discrimination or retaliation. (FAC ¶¶ 56–61.) California Government Code section 12940(k) provides that an employer must take all reasonable steps necessary to prevent unlawful harassment and discrimination from occurring. "The employer's duty to prevent harassment and discrimination is affirmative and mandatory." *Northrop Grumman Corp. v. Workers' Comp. Appeals Bd.*, 103 Cal. App. 4th 1021, 1035 (2002).

In most cases, when the issue of discrimination is triable, the issue of whether the employer failed to prevent discrimination is likewise triable. *See, e.g.*, *Leland v. City & County of San Francisco*, 576 F. Supp. 2d 1079, 1103 (N.D. Cal. 2008). As discussed above, the issue whether Vishay discriminated is triable. Vishay does not offer any argument or evidence suggesting this case is an exception to this rule—that is, that whether Vishay discriminated is genuinely disputed, but whether Vishay failed to prevent discrimination is not. Accordingly, the issue of failure to prevent discrimination is for the trier of fact, and the Court **DENIES** summary judgment as to Claim Three.

**E.     Claim Four: Retaliation (Cal. Gov't Code § 12945.2)**

Rivera's fourth claim is for retaliation for exercise of rights under the California Family Rights Act ("CFRA") in violation of California Government Code section 12945.2(l). (FAC ¶¶ 62–72.) The CFRA is part of the FEHA, *Rogers v. County of Los Angeles*, 198 Cal. App. 4th 480, 487 (2011), and provides "[i]t shall be an unlawful employment practice for an employer to . . . discharge . . . or discriminate against, any individual because of . . . [¶] (1) An individual's exercise of the right to family care and medical leave provided by" the CFRA, Cal. Gov't Code § 12945.2(l).

An employee establishes a prima facie case of retaliation in violation of the CFRA by showing: "(1) the defendant was a covered employer; (2) the plaintiff was eligible for CFRA leave; (3) the plaintiff exercised his or her right to take a qualifying leave; and (4) the plaintiff suffered an adverse employment action because he or she exercised the right to take CFRA leave." *Rogers*, 198 Cal. App. 4th at 487–88. The *McDonnell Douglas* burden-shifting framework applies in CFRA retaliation cases. *Faust v. Cal. Portland Cement Co.*, 150 Cal. App. 4th 864, 885 (2007).

Rivera's CFRA retaliation claim fails for two independent reasons. First, prior to January 1, 2021, California Government Code section 12945.2(c)(2)(A) defined an "employer" subject to the CFRA as one who directly employed 50 or more persons. The parties do not dispute that Rivera was not eligible for medical leave under the

CFRA because Vishay had less than 50 employees and was therefore not a covered employer.  (CSF 35.)  Thus, this claim fails outright on the first and second elements.

Second, this retaliation claim also fails for the same reasons the FEHA retaliation claim fails.  The parties do not dispute that Vishay terminated Rivera's employment because she was not reporting for work and had reached the end of the twenty-six weeks provided pursuant to company policy.  Rivera points to the nebulous temporal proximity between her request for additional leave and her termination, but, as above, this scintilla of evidence is insufficient.

Accordingly, the Court **GRANTS** summary judgment as to Claim Four.

**F.    Claim Six: Failure to Engage in a Good Faith Interactive Process (Cal. Gov't Code § 12940(n))**

Rivera's sixth claim is for Vishay's failure to engage in the interactive process.  (FAC ¶¶ 81–88.)  California Government Code section 12940(n) requires employers to engage in a good faith interactive process to determine effective reasonable accommodations, if any, "in response to a request for reasonable accommodation by an employee . . . with a known physical or mental disability."  *Raine v. City of Burbank*, 135 Cal. App. 4th 1215, 1222 (2006).  To recover, an employee must allege and prove facts to support a finding that she suffered from a disability, that the employer was aware of her alleged disability, and that the employer failed to engage in a good faith process to identify reasonable accommodations for her.  Cal. Gov't Code § 12940(n).

Vishay argues that "Rivera cannot identify a reasonable accommodation that was available at the time beyond her . . . request for a further . . . leave."  (Mot. 15.) This argument is well taken and is sufficient to meet Vishay's burden.  At first, Rivera and Vishay participated in the interactive process when Rivera provided Vishay doctors' notes and Vishay granted leave.  This constituted a complete interactive process and the provision of an accommodation.  The doctor's notes, however, were not specific; they indicated only that Rivera had a medical "condition" or

"complication" and that she could not work as a result.  (Scholl-Tatevosyan Decl. Exs. 5, 6, 8.)  Thus, it was Rivera who bore responsibility to continue or resume the interactive process by giving Vishay more information.  *See Raine*, 135 Cal. App. 4th at 1222; *see also Zarco v. VWR Int'l, LLC*, No. 20-cv-00089-HSG, 2021 WL 1927528, at *7–8 (N.D. Cal. May 13, 2021) (rejecting employee's argument that employer could have continued the interactive process by offering employee a modified position because employer was entitled to rely on medical evidence indicating employee was unable to work in determining that the interactive process would have been futile).  Vishay's evidence suggests Rivera did not give Vishay more information, which is sufficient to meet Vishay's initial burden.

Rivera, in turn, fails in her burden of showing a triable issue.  Rivera submits no evidence indicating she told Vishay about her medical diagnosis and the limitations it imposed with sufficient detail to allow Vishay to evaluate whether it could accommodate her condition with something less drastic than leave, such as modified job duties or an alternate position.  Vishay cannot be tasked with offering Rivera modified or alternate positions when the record lacks any indication that Rivera communicated to Vishay any details about her limitations.

Accordingly, the Court **GRANTS** summary judgment as to Claim Six.

## G.   Claim Seven: Wrongful Termination in Violation of Public Policy

Rivera's seventh claim is for wrongful (or tortious) termination in violation of public policy.  (FAC ¶¶ 89–99.)  "[W]hen an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action and recover damages traditionally available in such actions." *Tameny v. Atl. Richfield Co.*, 27 Cal. 3d 167, 170 (1980).

An employer's violation of a statute or an authorized regulation is typically the basis for the public policy violation at stake in a *Tameny* claim.  *See, e.g.*, *Green v. Ralee Eng'g Co.*, 19 Cal. 4th 66, 71 (1998).  Unsurprisingly, "the statutes that most clearly support a cause of action for tortious termination in violation of public policy

are those that expressly prohibit termination of employment . . . for certain reasons." *Grant-Burton v. Covenant Care, Inc.*, 99 Cal. App. 4th 1361, 1372 (2002).  Here, as discussed above, Rivera's FEHA discrimination claim presents genuine disputes of material fact precluding summary judgment.  Thus, a genuine dispute also exists as to whether Vishay violated the public policy embodied in the FEHA discrimination statutes.  Accordingly, the Court **DENIES** summary judgment as to Claim Seven.

## H.    Claim Eight: Declaratory Judgment

Rivera's eighth claim is for a declaratory judgment pursuant to California Code of Civil Procedure section 1060.  (FAC ¶¶ 100–109.)  The purpose of a declaratory judgment is to "serve some practical end in quieting or stabilizing an uncertain or disputed jural relation."  *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 647 (2009).  Moreover:

> [D]eclaratory relief is intended to offer guidance in shaping future conduct so as to avoid breach of a party's obligations. If that conduct has already matured, no such opportunity is present.  Consequently, where a party can allege a substantive cause of action, a declaratory relief claim should not be used as a superfluous "second cause of action for the determination of identical issues" subsumed within the first.

*Pub. Serv. Mut. Ins. Co. v. Liberty Surplus Ins. Corp.*, 51 F. Supp. 3d 937, 950 (E.D. Cal. 2014) (applying California law).  Here, Rivera's employment has already been terminated, and any violations of her rights will be fully addressed and remedied by her other viable causes of action.   Rivera's declaratory relief claim is thus superfluous, and the Court **GRANTS** summary judgment as to Claim Eight.

## I.    Punitive Damages

Finally, Vishay seeks summary judgment on Rivera's claim for punitive damages.  (Compl., Prayer for Relief ¶ 5 (seeking punitive damages under California law); *see, e.g.*, Compl. ¶ 42.)   A claim for punitive damages requires "clear and convincing" evidence that a defendant has been guilty of "oppression, fraud, or malice."  Cal. Civ. Code § 3294(a), (c).  Here, Rivera does not allege or argue that

Vishay committed fraud, so the issue is whether the evidence demonstrates that no reasonable juror could find that Vishay acted with oppression or malice. *Aguilar v. Atl. Richfield Co.*, 25 Cal. 4th 826, 850 n.11 (2001).

"Malice" is statutorily defined as "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." Cal. Civ. Code § 3294(c)(1). "Oppression" is statutorily defined as "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." *Id.* § 3294(c)(2).

Rivera points to two actions that she argues warrant punitive relief, but neither is sufficient to meet her burden of introducing a genuine dispute. The first is the act of terminating her employment pursuant to Vishay's disability leave policy. But Rivera submits no evidence suggesting anyone other than Nabeta was involved the termination decision, and the parties do not dispute that Nabeta is not an officer, director, or managing agent of Vishay. (CSF 55–57); Cal. Civ. Code § 3294(b) (allowing punitive damages when an officer, director, or managing agents has acted wrongfully). Nor did Rivera submit evidence that an officer, director, or managing agent authorized or ratified Nabeta's conduct. Cal. Civ. Code § 3294(b) (allowing punitive damages when an officer, director, or managing agent authorizes or ratifies an employee's wrongful acts). Moreover, when Nabeta terminated Rivera's employment, Nabeta did so according to company policy; indeed, Rivera's employment was terminated on the exact six-month anniversary of the start of her leave. Rivera submitted no evidence that would allow a jury to reasonably infer that Nabeta executed this policy maliciously or oppressively or in conscious disregard of Rivera's rights.

The second action Rivera identifies is Vishay's creation and distribution of the disability leave policy itself, and a similar conclusion applies. (Opp'n 16.) Rivera admits by implication that she is unaware of who at Vishay was responsible for

writing or maintaining this policy.  (*See id.*)  In the *Butte Fire Cases*, 24 Cal. App. 5th 1150, 1170 (2018), the plaintiffs sought punitive damages from the California PG&E on the basis that PG&E's risk management controls and fire mitigation policies and procedures justified punitive relief.  The Court of Appeal observed that plaintiffs pursuing punitive damages must present evidence "inconsistent with the hypothesis" that conduct was "the result of a mistake of law or fact, honest error of judgment, over-zealousness, mere negligence."  *Id.*  The Court of Appeal affirmed that PG&E's risk management policies themselves, without more, showed "mere carelessness or ignorance" at most.  *Id.*

Similarly, here, if Rivera is not accusing any particular individual of oppression or malice, then Rivera must demonstrate that the face of the policy alone is "inconsistent" with any hypothesis that the policy was a result of less culpable states of mind such as an honest error of judgment, overzealousness, negligence, "or other such noniniquitous human failing."  *Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, 1288 n.14 (1994).  This is a very high burden, and given the evidence as presented, it is one the Court finds no reasonable jury could determine Rivera has met.

Neither action Rivera identifies supports punitive damages.  Accordingly, the Court **GRANTS** summary judgment on Rivera's punitive damages claim.

## V.   CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion for Summary Judgment.   (ECF No. 27.)   Summary judgment is **GRANTED** as to Claim Two (FEHA retaliation), Claim Four (CFRA retaliation), Claim Six (failure to engage in the interactive process), Claim Eight (declaratory judgment), and Rivera's claim for punitive damages.   Summary judgment is **DENIED** as to Claim One (discrimination), Claim Three (failure to prevent), Claim Five (failure to reasonably accommodate), and Claim Seven (wrongful termination).

**IT IS SO ORDERED.**

October 12, 2021

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**